UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

STEVEN ODOM,

        Plaintiff,                      Case No. 1:13-cv-98

v.                                         Honorable Robert Holmes Bell

CAROL HOWES et al.,

        Defendants.

_____/

## **OPINION**

This is a civil rights action brought by a state prisoner pursuant to 42 U.S.C. § 1983. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's due process and access to the court claims. The Court will also dismiss Defendants Howes, White, and Shoenfeld for failure to state a claim. The Court will serve the remainder of the complaint against Defendants Casler, Ellis, and Hoffner.

**Discussion**

    I.       Factual allegations

Plaintiff Steven Odom is incarcerated by the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility, though the events about which he complains occurred while he was incarcerated at the Lakeland Correctional Facility (LCF). He sues the following employees of LCF: Warden Carol Howes, Deputy Warden Bonita Hoffner, Assistant Resident Unit Supervisor (ARUS) Terry Casler, Recreational Director Bruce White, Special Activities Director D. Shoenfeld, and Correctional Officer (unknown) Ellis.

In his *pro se* complaint, Plaintiff alleges that he was elected to be a member of the LCF Warden's Forum ("Forum") in June 2011. "The purpose of the Warden's Forum is to assist the warden in identifying and resolving problems which exist in the general population of the institution." (Compl. 3 n.1, docket#1.) In July 2011, Plaintiff was elected to be Chairman of the Forum. The Chairman acts as the liaison between the prison administration and the Forum. At the Forum's first meeting, it elected members to sit on various committees and formulated issues for presentation to LCF staff and the warden. Between July and December 2011, the Forum raised three "controversial" issues with the LCF administration:

> (1) a staff initiated proposal to spend $25,000 out of the Prisoner Benefit Fund (PBF) to instal[l] basketball courts on the yard; (2) the financial compensation [of] the Lakeland Athletic Director, Bruce White, received for donating and/or destroying PBF property (weights) without the approval and/or consent of the PBF, and (3) the requirement that Lakeland staff submit all requests for charitable donations to the Forum first, for approval, before processing and approving same by the PBF.[1]

---

[1] According to MDOC policy, each prison facility must maintain a "Prisoner Benefit Fund (PBF)" and a "PBF Committee." MDOC Policy Directive 04.02.110 ¶ B (effective Aug. 1, 2010). Money in the PBF comes from profits at the prisoner store, confiscated prisoner funds, outside contributions, and other sources delineated by MDOC policy. *See id.* ¶ C. PBF funds are used "for services, equipment, and supplies that provide a direct benefit to the prisoner
(continued...)

(Compl. 3-4 (footnote omitted).)  Plaintiff also submitted to Warden Howes a request from the Forum to purchase a "movie/video license for the general population," but Howes and Defendant Hoffner allegedly suggested that Plaintiff should "drop" that request.  (*Id.* at 4.)

In October 2011, Plaintiff was called to the office of the LCF Inspector, Mr. Vest, to discuss financial compensation that Defendant White allegedly received for "donating and/or destroying PBF Property."  (*Id.*)  After the meeting with Inspector Vest, Plaintiff sent a letter to Defendant Howes discussing the Forum's concerns that Vest was not an impartial investigator because he was a member of the PBF Committee when the decision was made to "table the donation/destruction of the property in question."  (*Id.*)

Shortly after sending the letter, Plaintiff learned that Defendant White wanted to see him in White's office.  When Plaintiff entered White's office, White stated, "You have to be very careful with what you're trying to do, because you don't have all the facts."  (*Id.*)  Plaintiff explained that he was relying on evidence presented by members of the Forum, and that he was merely presenting facts to the LCF administration.  As Plaintiff left White's office, White stated, "Don't let being Chairman get you put on the bus."  (*Id.* at 5.)  Plaintiff then sent a letter to Warden Howes about White's "bus" comment and raising concerns expressed by Forum members that "staff were targeting and harassing them for raising issues via the Forum."  (*Id.*)  Howes allegedly refused to look into the matter because Plaintiff did not identify the names of any staff members involved, other than White.

---

[1](...continued)
population and are solely for prisoner use . . . ." *Id*. ¶ E.  All expenditures from the PBF, except those identified in paragraph F of the foregoing policy, must be approved by the warden of the facility. *Id*. ¶ G.  The PBF Committee is responsible for making recommendations to the warden about which expenditures should be approved. *Id*. ¶ B.  The PBF Committee consists of two members of the Forum and two staff members designated by the warden. *Id*.

The Forum conducted a survey of the general prison population to determine whether PBF funds should be used to purchase additional basketball courts for the prison yard, an idea proposed by prison staff. Most of the inmates were opposed to the idea. Sometime thereafter, Plaintiff was called into Deputy Warden Hoffner's office. The warden's administrative assistant had asserted that Plaintiff made inappropriate comments during a Forum meeting. Hoffner admonished Plaintiff for making "inflammatory comments" at the meeting. (*Id.*) Hoffner told Plaintiff that "she did not appreciate the basketball court project being denied, because 'staff had taken "bids" out on the project.'" (*Id.* at 6.) Plaintiff assured Hoffner that the Forum was "only representing the interest of the general population." (*Id.*) As Plaintiff left Hoffner's office, she told him, "If you don't handle yourself accordingly as Chairman of the Forum, I'll remove you and have you transferred." (*Id.*)

On December 1, 2011, at a Forum meeting, Plaintiff informed Howes of Hoffner's statements. The Forum allegedly told Howes that Plaintiff never made inflammatory remarks while acting as Chairman. Howes congratulated Plaintiff and the Forum for their work and stated that no retaliatory action would be taken against them.

Shortly after the meeting with Howes, Plaintiff sat in on a meeting of the PBF Committee. One of the members of the committee, the LCF Business Manager, expressed displeasure with a requirement that she forward all staff requests for charitable donations from the PBF to the Forum. Plaintiff said that he would clarify the issue with the warden. The business manager replied, "You'd better!" (*Id.* at 7.)

On or around December 7, 2011, Defendant Casler posted a sign-up sheet in the housing unit for election to the Forum as a unit representative for January to June 2012. According

-4-

to Plaintiff, prisoners are permitted to run for two consecutive six-month terms, provided that they remain ticket free for six months. At the time, Plaintiff had not been convicted of a misconduct for over ten years. Plaintiff signed the sheet in front of Casler, who asked him, "Is that a good idea?" (*Id.*) Plaintiff asked Casler what he meant, and Casler smiled and stated, "Because I'll have to transfer you." (*Id.*) Plaintiff asserts that as of December 12, 2011, he was the only "non-white" prisoner to sign the list. (*Id.*)

On December 9, 2011, Plaintiff went to speak with Special Activities Director Shoenfeld about a Forum proposal regarding "approval or disapproval of the Holiday movies." (*Id.*) Shoenfeld refused to provide any information, so Plaintiff prepared a letter to Defendant Hoffner, complaining about Shoenfeld's conduct. Plaintiff asked Defendant Casler to hand-deliver the letter to Hoffner's mailbox. That same day, Casler processed a "Security Classification Screen-Review" for Plaintiff to be transferred to another facility, and Hoffner approved the request. (*Id.*)

At approximately 8:10 a.m. on December 10, 2011, an officer called Plaintiff to the officer's station and told him that Shoenfeld wanted to see him. When Plaintiff arrived at Shoenfeld's office, Shoenfeld pointed to a copy of the letter that Plaintiff had written to Hoffner. Plaintiff asked, "Did you wake me up and have me called out to 'check' me about this letter?" (*Id.* at 8.) Shoenfeld replied, "Absolutely." (*Id.*) Plaintiff turned around and began to walk out of the room. Shoenfeld followed Plaintiff, stating, "I'm not through with you yet!" (*Id.*) Shoenfeld told Plaintiff to go into a nearby classroom. As Plaintiff stepped into the room, Shoenfeld turned red, his eyes started watering, his body started to shake, and he pointed his finger in Plaintiff's face, stating, "you're a motherfucking liar," "you're not man enough to talk face-to-face with me," and, "I know how to deal with people like you." (*Id.*)

On December 13, 2011, at approximately 6:00 a.m., Plaintiff was escorted out of his cell in handcuffs and taken to the control center. At the control center, he saw Defendant Casler and asked him, "Why am I being transferred and without my property?" (*Id.* at 9.) Casler replied, "Odom, you should have never signed up on that list again." (*Id.*) Several hours later, Plaintiff was transferred to Richard A. Handlon Correctional Facility (MTU) without his personal property. Prison officials eventually forwarded Plaintiff's property to him on December 16, 2011. Defendant Ellis was identified on the property receipt as the officer responsible for packing up Plaintiff's property. When Plaintiff examined his property, he found that "pictures, appraisal notes, property receipts, legal documents in [his] criminal case . . . , and a file containing all of the letters addressed to Defendant Howes and her responses regarding the Forum, were missing." (*Id.*) Also missing were documents related to an action that Plaintiff had filed in state court concerning the invasion of his home and theft of his property.[2] Later, Plaintiff learned from an inmate at LCF that Ellis was seen tearing up papers belonging to Plaintiff while he was packing up Plaintiff's property.

Plaintiff's mother learned about the destruction of Plaintiff's personal property and wrote a letter to Warden Howes about it. In a return letter, Howes responded that Plaintiff was transferred to make room for another prisoner, and that if Plaintiff's property was damaged, Plaintiff should file a grievance requesting reimbursement. Plaintiff contends that he was packed up and transferred in a such a way as to deter him from engaging in protected conduct, namely, "raising, addressing, and attempting to resolve issues that effect the general prisoner population as an elected member of the Forum." (*Id.* at 10-11.) As a result of the transfer, Plaintiff was not able to

---

[2] Plaintiff asserts that the action contained "Landlord/Tenant and Breach of Contract claims." (Compl. 11, docket #1.)

-6-

participate in an appreciation meal for members of the Forum, which was held at LCF in January 2012.

Based on the foregoing allegations, Plaintiff claims that Defendants: retaliated against him in violation of the First Amendment; interfered with his right of access to the courts in violation of the First, Sixth, and Fourteenth Amendments; deprived him of property without due process in violation of the Fourteenth Amendment; and violated his right to equal protection under the Fourteenth Amendment. As relief, Plaintiff seeks declaratory and injunctive relief and damages.

II.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if "'it fails to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that

the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A. Supervisory Liability

Plaintiff's primary allegations against Warden Howes are that she failed to train her subordinates and failed to correct their actions in response to Plaintiff's complaints.[3] Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881,

---

[3] In addition, Howes allegedly suggested that Plaintiff should drop an issue raised by the Forum, but that suggestion did not violate any of Plaintiff's constitutional rights.

888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). As the Sixth Circuit has repeatedly emphasized:

> Section 1983 liability will not be imposed solely upon the basis of respondeat superior. There must be a showing that the supervisor encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum, a § 1983 plaintiff must show that a supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate.

*Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)); *accord Copeland v. Machulis*, 57 F.3d 476, 481 (6th Cir. 1995); *Walton v. City of Southfield*, 995 F.2d 1331, 1340 (6th Cir. 1993); *Leach v. Shelby County Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Plaintiff has not alleged that Defendant Howes engaged in any active unconstitutional behavior. Accordingly, she will be dismissed for failure to state a claim.

### B. Due Process

Plaintiff contends that he was deprived of the following without due process: (1) the "right to pack and transfer with his property," which ordinarily entails a return of property within a 24 hours after transfer to another institution; (2) the right to participate in the appreciation meal at LCF; and (3) the right to run for another six-month term as a unit representative at LCF. (*See* Compl. 12, docket #1.) The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "Without

a protected liberty or property interest, there can be no federal procedural due process claim." *Experimental Holdings, Inc. v. Farris*, 503 F.3d 514, 519 (6th Cir. 2007) (citing *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 579 (1972)).

The Supreme Court long has held that the Due Process Clause does not protect every change in the conditions of confinement having an impact on a prisoner. *See Meachum v. Fano*, 427 U.S. 215, 225 (1976). In *Sandin v. Conner*, 515 U.S. 472, 484 (1995), the Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. According to the *Sandin* Court, a prisoner is entitled to the protections of due process only when a sanction "will inevitably affect the duration of his sentence," or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486-87.

Plaintiff does not have a constitutionally-protected interest in placement at a particular prison facility, *see Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Meachum*, 427 U.S. at 224-25, in running for election as a unit representative, *VanDiver v. Martin*, 48 F. App'x 517, 519 (6th Cir. 2002) (no liberty or property interest in a position as an inmate representative on the warden's forum), in uninhibited access to his personal property during his incarceration, or in attendance at a special appreciation meal for members of the Forum. Moreover, the foregoing deprivations do not impose an atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Sandin*, 515 U.S. at 484-86 (placement in administrative segregation for 30 days does not impose an atypical and significant hardship).

In support of his due process claim, Plaintiff refers to MDOC Policy Directive 04.07.112, which concerns the proper handling of prisoner property when a prisoner is transferred

from one institution to another. *See id.* ¶¶ T-Y (effective Mar. 21, 2011). However, MDOC policies do not themselves create constitutionally-protected interests, and Defendants' alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation. *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Smith v. Freland*, 954 F.2d 343, 347-48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94–23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest). Section 1983 is addressed to remedying violations of federal law, not state law. *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580–81.

The destruction of Plaintiff's property by Ellis implicates Plaintiff's property rights, but a due process claim regarding the destruction of that property is barred by the doctrine of *Parratt v. Taylor*, 451 U.S. 527 (1981), *overruled in part by Daniels v. Williams*, 474 U.S. 327 (1986). Under *Parratt*, a person deprived of property by a "random and unauthorized act" of a state employee has no federal due process claim unless the state fails to afford an adequate post-deprivation remedy. If an adequate post-deprivation remedy exists, the deprivation, although real, is not "without due process of law." *Parratt*, 451 U.S. at 537. This rule applies to both negligent and intentional deprivation of property, as long as the deprivation was not done pursuant to an established state procedure. *See Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984). Because Plaintiff's claim is premised upon allegedly unauthorized acts of a state official, he must plead and prove the inadequacy of state post-deprivation remedies. *Copeland v. Machulis*, 57 F.3d 476, 479-80 (6th Cir. 1995); *Gibbs v. Hopkins*, 10 F.3d 373, 378 (6th Cir. 1993). Under settled Sixth Circuit

authority, a prisoner's failure to sustain this burden requires dismissal of his due process claim. *See Brooks v. Dutton*, 751 F.2d 197 (6th Cir. 1985).

Plaintiff has not sustained his burden in this case. Plaintiff has not alleged that state post-deprivation remedies are inadequate. Moreover, numerous state post-deprivation remedies are available to him. First, a prisoner who incurs a loss through no fault of his own may petition the PBF for compensation. MICH. DEP'T OF CORR., Policy Directive 04.07.112 ¶ B (effective Jul. 9, 2012). Aggrieved prisoners may also submit claims for property loss of less than $1,000 to the State Administrative Board. MICH. COMP. LAWS § 600.6419; Policy Directive, 04.07.112 ¶ B. Alternatively, Michigan law authorizes actions in the Court of Claims asserting tort or contract claims "against the state and any of its departments, commissions, boards, institutions, arms, or agencies." MICH. COMP. LAWS § 600.6419(1)(a). The Sixth Circuit specifically has held that Michigan provides adequate post-deprivation remedies for deprivation of property. *See Copeland*, 57 F.3d at 480. Plaintiff does not allege any reason why a state-court action would not afford him complete relief for the deprivation, either negligent or intentional, of his personal property.

Because Plaintiff's due process claim regarding the destruction of his property is barred by *Parratt*, and because the other deprivations alleged do not implicate a protected interest, he does not state a due process claim.

### C. Access to the Courts

Plaintiff claims that Defendants have violated his right of access to the courts. Specifically, Plaintiff claims that Defendants Howes, Hoffer, and Casler transferred him to another facility without his legal property in order to prevent him from "accessing the courts in his pending criminal and civil case," and to prevent him from "establishing a claim against them for retaliation."

(Compl. 11, docket #1.) Plaintiff asserts that he was pursuing a landlord-tenant breach of contract claim in state court at the time that he was transferred, and that LCF has a library containing statutes on that area of the law, but the prison to which he was transferred, MTU, does not have such materials. Plaintiff also claims that the destruction of his property by Defendant Ellis hindered his ability to establish a retaliation claim against Defendants Howes, Hoffner, White, and Shoenfeld, and his ability to establish damages in his state court action.

It is well established that prisoners have a constitutional right of access to the courts. *Bounds v. Smith*, 430 U.S. 817, 821 (1977). The principal issue in *Bounds* was whether the states must protect the right of access to the courts by providing law libraries or alternative sources of legal information for prisoners. *Id.* at 817. The Court further noted that in addition to law libraries or alternative sources of legal knowledge, the states must provide indigent inmates with "paper and pen to draft legal documents, notarial services to authenticate them, and with stamps to mail them." *Id.* at 824-25. The right of access to the courts also prohibits prison officials from erecting barriers that may impede the inmate's access to the courts. *See Knop v. Johnson*, 977 F.2d 996, 1009 (6th Cir. 1992).

An indigent prisoner's constitutional right to legal resources and materials is not, however, without limit. In order to state a viable claim for interference with his access to the courts, a plaintiff must show "actual injury." *Lewis v. Casey*, 518 U.S. 343, 349 (1996); *see also Talley-Bey v. Knebl*, 168 F.3d 884, 886 (6th Cir. 1999); *Knop*, 977 F.2d at 1000. In other words, a plaintiff must plead and demonstrate that the defendants' actions, or shortcomings in the prison's legal materials, have hindered, or are presently hindering, his efforts to pursue a nonfrivolous legal claim. *Lewis*, 518 U.S. at 351-53; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996).

The Supreme Court has strictly limited the types of cases for which there may be an actual injury:

> *Bounds* does not guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any other litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Lewis*, 518 U.S. at 355. In other words, "a prisoner's right to access the courts extends to direct appeals [from a criminal conviction], habeas corpus applications, and civil rights claims only." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc).

Because the nature of the underlying claim is relevant to determining whether a prisoner has suffered injury to a nonfrivolous legal claim, the Supreme Court has held that "the underlying cause of action . . . is an element that must be described in the complaint, just as much as allegations must describe the official acts frustrating the litigation." *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (citing *Lewis*, 518 U.S. at 353 & n.3). Where, as here, "the access claim . . . looks backward,[4] the complaint must identify a remedy that may be awarded as recompense but not otherwise available in some suit that may yet be brought." *Id.* at 415. "Like any other element of

---

[4] Backward-looking claims "do not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable. The ultimate object of these sorts of access claims . . . is not the judgment in a further lawsuit, but simply the judgment in the access claim itself, in providing relief obtainable in no other suit in the future." *Christopher*, 536 U.S. at 414 (footnotes omitted). In contrast, the "essence" of a forward-looking claim "is that official action is presently denying an opportunity to litigate for a class of potential plaintiffs. The opportunity has not been lost for all time, however, but only in the short term; the object of the denial-of-access suit . . . is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has been removed." *Id.* at 413.

an access claim, the underlying cause of action and its lost remedy must be addressed by allegations in the complaint sufficient to give fair notice to a defendant." *Id.* at 416.

Plaintiff's landlord/tenant action in state court is not an appeal from his criminal conviction, a habeas corpus application, or a civil rights claim; thus, it is not the sort of action to which the right of access extends. *See Thaddeus-X,* 175 F.3d at 391. Consequently, any injury to that action does not give rise to a constitutional claim.

In contrast, a criminal case is the sort of action protected by the right of access to the courts. Plaintiff does not identify any injury to his criminal case, however. Thus, that case cannot serve as the basis for an access claim.

A retaliation claim is a type of civil rights claim; as such, it is also protected by the right of access to the courts. Plaintiff does not expressly identify the retaliation claim on which his access claim is based, as required by *Christopher*, but the Court liberally construes the complaint to assert that Defendants have hindered Plaintiff's ability to pursue the retaliation claims against Defendants that are stated in the complaint. That being the case, Plaintiff has not satisfied the actual injury requirement for stating a claim. Examples of injury include having a claim "lost or rejected" by a court, *Lewis*, 518 U.S. at 356, "having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline," *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005). Plaintiff alleges none of the foregoing, and at this stage of the case, he has not lost a claim, an opportunity to sue, or a particular remedy as a result of Defendants' actions. Indeed, the thrust of Plaintiff's allegations is that Defendants *intended* to prevent him from establishing a future retaliation claim. But neither an *attempt* to harm Plaintiff, nor a mere possibility that Defendants' actions may cause future harm, are sufficient to bring a claim. Actual injury is required, and absent

a showing of such injury at the pleading stage, Plaintiff cannot assert a claim. *See Thaddeus-X*, 175 F.3d at 394 (noting that "the requirement that an inmate show 'actual injury' derives from the constitutional principle of standing"). Thus, Plaintiff's access to the courts claim also will be dismissed.

### E. Retaliation

Plaintiff also contends that: Defendants Hoffner, White and Shoenfeld threatened Plaintiff; Defendants Hoffner and Casler transferred Plaintiff to another facility without his property; and Defendant Ellis destroyed some of Plaintiff's property, in each case, in retaliation for Plaintiff's protected activity, i.e., his complaints to prison officials and his conduct in connection with the Forum. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394.

Assuming that Plaintiff was engaged in protected conduct, his allegations against White and Shoenfeld fail to satisfy the adverse-action element of a retaliation claim. In determining whether an action is sufficiently adverse, the inquiry is an objective one, and does not depend on how a particular plaintiff reacted. The relevant question is whether Defendant's conduct is "*capable* of deterring a person of ordinary firmness." *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002). A threat of harm may satisfy the adverse-action requirement if it would deter a person of ordinary firmness from exercising his or her First Amendment rights. *See, e.g., Scott v. Churchill*, 377 F.3d

565, 571-72 (6th Cir. 2004) (threat to impose disciplinary sanctions); *Thaddeus-X*, 175 F.3d at 396, 398 (threat of physical harm); *see also Reynolds-Bey v. Harris*, 428 F. App'x 493 (6th Cir. 2011) (implied threat of violence by the use of racial slurs accompanied by repeated shakedowns); *Smith v. Yarrow*, 78 F. App'x 529, 542 (6th Cir. 2003) (threat to change drug test results). However, certain threats and deprivations are so *de minimis* that they do not rise to the level of being constitutional violations. *Thaddeus-X*, 175 F.3d at 398; *Smith*, 78 F. App'x at 542. As the Sixth Circuit recently explained:

> Whether an alleged adverse action is sufficient to deter a person of ordinary firmness is generally a question of fact. Nevertheless, when a plaintiff's alleged adverse action is "inconsequential," resulting in nothing more than a "de minimis injury," the claim is properly dismissed as a matter of law. Indeed, it "trivialize[s] the First Amendment to allow plaintiffs to bring . . . claims for *any* adverse action[,] no matter how minor."

*Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583-84 (6th Cir. 2012) (quoting *Bell v. Johnson,* 308 F.3d 594, 603, 606 (6th Cir.2002)).

Plaintiff alleges that White told him to "be very careful" and to not "let being Chairman get [him] put on the bus." (Compl. 4-5, docket #1.) White's statements did not threaten any specific harm to Plaintiff; at most, they might be construed as a threat to transfer Plaintiff to another facility. The Sixth Circuit, however, has repeatedly held that a prison transfer is generally not sufficiently adverse to give rise to a retaliation claim. *See Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("Since prisoners are expected to endure more than the average citizen, and since transfers are common among prisons, ordinarily a transfer would not deter a prisoner of ordinary firmness from continuing to engage in protected conduct."); *accord Hix v. Tenn. Dep't of Corr.*, 196 F. App'x 350, 358 (6th Cir. 2006); *King v. Zamiara*, 150 F. App'x 485, 493-94 (6th Cir. 2005);

-17-

*Smith v. Yarrow*, 78 F. App'x. 529, 543 (6th Cir. 2003); *Jewell v. Leroux*, 20 F. App'x 375, 378 (6th Cir. 2001); *Friedmann v. Corr. Corp. of Am.*, 11 F. App'x 467, 469-71 (6th Cir. 2001).

In *Siggers-El*, the Sixth Circuit carved out an exception to the foregoing rule for cases in which "foreseeable, negative consequences 'inextricably follow' from the transfer—such as the prisoner's loss of his high-paying job and reduced ability to meet with his lawyer." *Jones v. Caruso*, 421 F. App'x 550, 553 (6th Cir. 2011) (citing *Siggers-El*, 412 F.3d at 701-02). Thus, a threat and recommendation to transfer a prisoner to a living environment with more restrictions and fewer privileges (*e.g.*, a "lock-down unit" at another facility), *see Hill*, 630 F.3d at 475, or to an area of the prison used to house mentally ill inmates, *see Thaddeus-X*, 175 F.3d at 398, could be sufficiently adverse to give rise to a retaliation claim. White's statement merely implied that Plaintiff could be transferred to another facility; it did not threaten a transfer with foreseeable negative consequences. Consequently, Plaintiff does not state a claim against White.

Shoenfeld allegedly refused to provide Plaintiff with certain information regarding approval of movies, called Plaintiff into his office to discuss a letter that Plaintiff had written to Deputy Warden Hoffner, pointed a finger in Plaintiff's face, called Plaintiff a liar, and stated that he knew how to "deal" with people like Plaintiff. Shoenfeld's statements and actions did not threaten or result in any significant, adverse consequences for Plaintiff. Plaintiff does not have a right to be free from verbal abuse, *see Ivey v. Wilson,* 832 F.2d 950, 954-55 (6th Cir. 1987), and minor threats do not rise to the level of a constitutional violation, *Thaddeus-X,* 175 F.3d at 398. *See also Taylor v. City of Falmouth*, 187 F. App'x 596, 600 (6th Cir. 2006) (verbal abuse is not sufficient evidence of adverse action); *Smith v. Craven,* 61 F. App'x 159, 162 (6th Cir. 2003) (verbal harassment is not an adverse action); *Carney v. Craven,* 40 F. App'x 48, 50 (6th Cir. 2002) (same). Thus, Shoenfeld's

accusations, gestures, and vaguely threatening statements are not sufficiently adverse to support a retaliation claim against him.

With respect to Defendants Casler, Hoffner, and Ellis, the Court concludes that Plaintiff's allegations are sufficient to warrant service of the complaint on them.

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's due process and access-to-the-courts claims will be dismissed for failure to state a claim. Because Plaintiff fails to state a claim against Defendants Howes, White, and Shoenfeld, they will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will allow the remainder of Plaintiff's claims to proceed, and will order service of the complaint on Defendants Casler, Ellis, and Hoffner.

An Order consistent with this Opinion will be entered.


Dated: June 11, 2013               /s/ Robert Holmes Bell
                                   ROBERT HOLMES BELL
                                   UNITED STATES DISTRICT JUDGE